UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| SURREAL HOLDINGS, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON WEB SERVICES, INC. a Delaware profit corporation,<br><br>Defendant. | CASE NO. 2:24-CV-1262<br><br>COMPLAINT<br><br>JURY DEMAND |

## **COMPLAINT**

Plaintiff, Surreal Holdings, LLC, by and through its attorneys, files this Complaint for breach of contract and other claims for damages against Defendant, Amazon Web Services, Inc.

## **PARTIES**

1. Surreal Holdings, LLC ("Surreal") is a Delaware corporation with a registered office in Alpharetta, GA at 92 Milton Ave, Suite 300, Alpharetta, GA, 30009. Surreal provides end-to-end programming, software, and consulting services relating to online 3D virtual environments and real-time virtual experiences and related media.

2. Amazon Web Services, Inc. ("AWS") is a Delaware corporation with a registered office in Seattle, WA at 410 Terry Ave N, Seattle, WA 98109. AWS is an Amazon subsidiary that provides cloud computing platforms and related services to clients. AWS regularly contracts with companies such as Surreal to serve its clients, essentially acting as a broker and manager for those services.

COMPLAINT - 1
CASE NO. 2:24-cv-1262
#5656700 v3 / 76907-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

4. The Court has personal jurisdiction over the parties in that AWS's principal place of business is in this District and Surreal agreed to submit to this jurisdiction for any disputes arising out of the parties' agreements.

5. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and (2) because AWS is headquartered in this District, a substantial part of the events or omissions giving rise to Surreal's claim occurred in this District.

## BACKGROUND AND STATEMENT OF FACTS

6. On March 31, 2023, AWS entered into an agreement with Surreal, titled the AWS Professional Services Main Services Agreement ("MSA"), setting forth general terms and conditions for subsequent work to be performed pursuant to work orders contemplated to be executed in connection with the MSA.

7. On June 8, 2023, AWS and Surreal entered into a Work Order to AWS Professional Services Main Services Agreement ("Work Order").

8. The Work Order expressly states "If there is a conflict between this Work Order and the Agreement, the terms of this Work Order will control with respect to the subject matter of this Work Order."

9. The Work Order identified the AWS contracting entity as "Amazon Web Services EMEA SARL – Dubai Branch," and the end-customer as "Emirates."

10. Emirates is an airline based in Garhoud, Dubai, and on information and belief, is owned through a subsidiary by the government of Dubai's Investment Corporation of Dubai.

11. The Work Order contained a detailed description of the services to be provided by Surreal ("Services"), which included working with AWS and Emirates to design, build,

COMPLAINT - 2
CASE NO. 2:24-cv-1262
#5656700 v3 / 76907-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

implement, and support a "mixed-reality" software application for the primary purpose of training cabin crew and customer service agents ("Software").

12. The mixed-reality platform would require the building of a virtual reality application that emulated realistic work-place environments and situations, including the interior of Emirates planes for the purposes of training, as well as supporting the implementation of infrastructure deployments and integration of the Software with specific hardware, among other things.

13. In addition to the above product development and implementation, the Work Order provided for an ongoing licensed based model for payment to Surreal for the use of Surreal's Software, including the provision of technical assistance with continued development ("License and Support Fees").

14. The Work Order contained a list of specific deliverables relating to the Services, subject to scheduled delivery dates and designated development milestones ("Milestone").

15. The amount of the License and Support Fees payable to Surreal by AWS under the Work Order were based, in part, on the number of users of the Software, in an amount not to exceed $200,000 per month.

16. According to the Work Order, the License and Support Fees were to apply for the full duration of the Work Order and for an initial period of five years.

17. Section 5.3 of the Work Order states that AWS may reject a deliverable only if "it has failed to comply with the Deliverable Deliverables for each Milestone provided in the Deliverable Description section of this Work Order, for that Deliverable."

18. To reject a deliverable under the terms of the Work Order, AWS must send an email identifying the reason for the rejection (a "Rejection Notice") within ten days of delivery of the deliverable. If AWS fails to timely provide the Rejection Notice, then the deliverable is deemed acceptable. Also, if AWS or Emirates modifies the deliverable or uses it for any purpose other than for testing as part of the acceptance process, then they cannot reject the deliverable.

COMPLAINT - 3
CASE NO. 2:24-cv-1262
#5656700 v3 / 76907-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

19. Even if a deliverable is rejected by AWS in good faith, the Work Order requires Surreal be given an opportunity to cure.

20. From the start of the project, AWS began imposing new program requirements and making requests that were outside the scope of the Work Order. Surreal informed AWS that it could not do extra work beyond the scope of the Work Order without being compensated. Nevertheless, the requests kept coming.

21. AWS's primary concern appeared to be pleasing its client, Emirates, rather than compliance with the terms of the MSA and Work Order. AWS repeatedly insisted that Surreal simply perform additional work, whether it fell under the scope of work in the Work Order or not.

22. In approximately September of 2023, AWS began to pressure Surreal to complete the project by October, even though there was no detailed acceptance criteria yet devised, and no requirement (or possibility) that the work be completed so quickly.

23. As Surreal rushed to complete its work and meet deliverable deadlines, Emirates constantly changed its requirements, and AWS would pressure Surreal to conform its software and services to the new requirements, which were beyond the scope of the Work Order.

24. In October of 2023, AWS and Surreal executed Amendment No. 1 to Work Order AWS Professional Services Main Service Agreement ("the First Amendment").

25. The First Amendment reflected limited additional work Surreal had been asked to do in the June and July timeframe to add additional VR functionality. While the initial work covered approximately twenty steps of a VR sequence, the requests from AWS to expand the scope of the initial work continued to balloon to well over 500 steps.

26. In October of 2023, AWS and Emirates suddenly instructed Surreal to delay its work, and instead pivot to creating a demo for the premier aviation industry show, the Dubai Air Show. Since the Dubai Air show was scheduled to occur in mid-November, Surreal put significant time and resources into creating a demo fit for public use and demonstration. This demo was outside the scope of the MSA and Work Order.

COMPLAINT - 4
CASE NO. 2:24-cv-1262
#5656700 v3 / 76907-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

27. The demo was the centerpiece of the Emirates booth at the Dubai Air Show. Everyone from Emirate executives, the press, and thousands of attendees saw the Software Surreal had created and had the opportunity to use it. The system allowed users to experience and explore the virtual cabin of an Emirates airplane.

28. Surreal worked with a partner-vendor, Tsukat, in developing the demo. Surreal paid Tsukat out of its own pocket for its assistance in developing the demo.

29. Attendees posted videos of the system on the internet where they were viewed by hundreds of thousands of people. Both Emirates and AWS were complimentary to Surreal regarding the positive reception the demo received and the publicity that came with it.

30. After the Air Show, Surreal requested compensation for its work on the demo. However, AWS refused, stating that it was a "partner effort" and that if Surreal had wanted to get paid for the work, it should have worked that out in advance. Neither AWS not Emirates ever paid Surreal or its vendor for any of the work performed on the demo.

31. By December of 2023, AWS had not paid Surreal in months, improperly rejecting multiple deliverables and making last-minute, outside of scope requests for changes and modifications to the deliverables.

32. Following months of additional negotiations, an second amendment to the Work Order (the "Second Amendment") was executed in February of 2024, incorporating some of AWS's new requests for changes outside the scope of the original Work Order and First Amendment, to ensure that Surreal would be paid for all the work it performed on the modified deliverables. The Second Amendment also extended Milestone deadlines in acknowledgement of the delays attributable to the demo and the increased scope of the deliverables.

33. When Milestones were delivered to AWS, the agreed-upon protocol required AWS would test the Milestone deliverable, classify bugs into high, medium, and low based on the agreed protocol, and once a Milestone had no remaining high or medium bugs, it would be accepted and Surreal would invoice for that Milestone.

COMPLAINT - 5
CASE NO. 2:24-cv-1262
#5656700 v3 / 76907-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

34. In February of 2024, Surreal prepared to deliver the finished software to AWS, including all remaining Milestones under the Work Order and Amendments.

35. However, AWS, in bad faith, began rejecting the deliverables, claiming as bases for the rejections that Emirates had new requests for changes outside the scope of the Work Order and Amendments, and that the deliverables could not be accepted until the changes were made.

36. AWS admitted that Emirates' new requests were outside the scope of the Work Order and Amendments. Surreal had no contractual obligation to agree to such requests.

37. In March of 2023, Surreal delivered the final completed deliverables to AWS.

38. AWS purported to reject these March deliverables, but only after more than ten days had passed. AWS's failure to reject the deliverables within ten days resulted in acceptance.

39. Despite the failure of AWS to timely reject the deliverables, AWS continued to demand changes to the Work Order. Surreal explained that the new changes were not part of the contracted-for deliverables, and that the bases for AWS's rejections were not supported by the Work Order and Amendments. Surreal delivered all of the contracted-for deliverables all of which were effectively accepted by AWS when it failed to timely reject them.

40. AWS stated they would discuss the matter with Emirates. Between April 23 and May 6, Surreal was told that AWS was negotiating a path forward with Emirates in Dubai.

41. On May 6, 2024, Surreal received correspondence from Mark Willis, the engagement manager for AWS, stating that he wanted to discuss the deliverables. Surreal reached out to him to schedule a time to meet, but he never responded.

42. Instead, on May 9, 2024, Surreal received a letter from AWS purporting to terminate the MSA and Work Order under the "cause" provision of the MSA (the "Termination Letter").

43. Although Section 10.3 (the "Cause Provision") of the MSA required both a material breach, and an opportunity to cure, no such opportunity to cure was given. Instead, the Termination Letter purported to terminate Surreal "effective from the date of this letter."

COMPLAINT - 6
CASE NO. 2:24-cv-1262
#5656700 v3 / 76907-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

44. In the Termination Letter, AWS identified only two bases for termination of the MSA and Work Order. Both were asserted in bad faith after accepting delivery of all the deliverables.

45. First, AWS claimed that Surreal was in breach of the MSA because it publicized its work on the demo at the Dubai Air Show on Surreal's website. However, this work was not confidential as Emirates had already displayed the complete demo to the public at the airshow. The demo was reported in the media with footage of the demo on display (taken with Emirates' consent) posted for the world to see on Youtube. *See* https://www.youtube.com/watch?v=mMLaGxT4H38&t=1597s (at 26:40 mark). Regardless, Surreal had already removed the videos shortly after AWS complained about them on May 2, 2024.

46. Second, AWS asserted that the appearance of AWS and Emirates logos on Surreal's webpage scrolling along the bottom of the site with the logos for numerous other companies such as Coca-Cola, Verizon, MLB, Nissan, AMD, FLIR, Red Bull, and Ryobi, to name a few, constituted a breach of Section 8.5 of the MSA justifying termination. To be clear, the appearance of the logos on Surreal's site did not include any reference to the MSA or Work Order. Nor did Surreal's site include any text whatsoever to explain the reason for the logos on its site. Consequently, because this innocuous appearance of the logos on Surreal's site was not "in connection with the MSA," it did not constitute a breach, much less a material breach justifying termination.

47. The Termination Letter from AWS was nothing but a pretext to avoid paying Surreal for the deliverables it had already accepted. On April 15, 2024, Surreal submitted to AWS invoice #312 for $2,916.08. Payment was due on May 31, 2024. On May 20, 2024, Surreal submitted to AWS invoice #319 for $1,276,977.42. Payment was due on July 4, 2024. Following the purported termination, however, AWS has refused to pay these invoices all while keeping and using all of the deliverables.

COMPLAINT - 7
CASE NO. 2:24-cv-1262
#5656700 v3 / 76907-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

48. Further, AWS has breached its obligation to pay any License or Support fees since June 8, 2023 as required under the Work Order, which over the life of just the initial 5-year term of the Work Order could exceed $15,000,000.

49. AWS and Emirates continue to use and benefit from the Software without any license from Surreal as neither has ever paid Surreal any license fees.

## COUNT I: BREACH OF CONTRACT

50. The allegations above are incorporated by reference as though fully set forth here.

51. The MSA, Work Order, and its Amendments constitute valid and binding contracts.

52. AWS breached the Work Order, Amendments, and MSA by failing to pay for services rendered or pay for any of the License and Service Fees.

53. AWS further breached the Work Order, Amendments, and MSA by purporting to reject deliverables without any good faith basis, or contractual justification, for doing so.

54. AWS further breached the Work Order, Amendments, and MSA by purporting to terminate the Work Order, Amendments, and MSA without a good faith basis, or contractual justification, for doing so.

55. AWS's purported termination of the Work Order, Amendments, and MSA, is an anticipatory repudiation and is therefore a further breach of the same.

56. Surreal is entitled to its expectation damages in an amount to be proven at trial, plus prejudgment interest and costs to the extent allowable under the contracts or applicable law.

## COUNT II: BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

57. The allegations above are incorporated by reference as though fully set forth here.

58. The Work Order, Amendments, and MSA, are governed and construed according to the laws of the State of Washington.

59. In Washington, every contract contains an implied duty of good faith and fair dealing.

60. The actions and inactions of AWS set forth above constitute a breach of the implied covenant of good faith and fair dealing.

COMPLAINT - 8
CASE NO. 2:24-cv-1262
#5656700 v3 / 76907-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

61. AWS breached the covenant of good faith and fair dealing implied in the MSA, Work Order, and Amendments by purporting to reject deliverables without a good faith basis, or contractual justification, for doing so.

62. AWS breached the covenant of good faith and fair dealing implied in the MSA, Work Order, and Amendments, by purporting to terminate the same without a good faith basis, or contractual justification, for doing so.

63. AWS breached the covenant of good faith and fair dealing by inducing Surreal to perform additional work without any intention of compensating it for the additional work.

64. AWS breached the covenant of good faith and fair dealing by concocting false justifications for its bad faith termination of the contract and inducing Surreal to complete work it had no intention of paying for.

65. AWS acted dishonestly and in its own self-interest, rather than in accordance with the implied covenant of good faith and fair dealing.

66. As a direct and proximate result of the breaches and violations of the implied covenant of good faith and fair dealing described above, Surreal has, and will continue to, suffer damages in an amount to be determined at trial, plus prejudgment interest and costs to the extent allowable under the contracts or applicable law.

## COUNT III: QUASI-CONTRACT (UNJUST ENRICHMENT)

67. The allegations above are incorporated by reference as though fully set forth here.

68. AWS requested that Surreal create and deliver the demo for Emirates to use at the Dubai airshow. The work was outside the MSA, Work Order, or Amendments.

69. Surreal timely delivered the demo and reasonably expected AWS to pay for the demo.

70. AWS acknowledged and accepted the demo, but then refused to pay for it.

71. AWS has been unjustly enriched by its wrongful refusal to pay sums owing for services rendered and for retaining benefits obtained through Surreal's services.

COMPLAINT - 9
CASE NO. 2:24-cv-1262
#5656700 v3 / 76907-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

72. AWS's retention of the benefits obtained through Surreal's services would be unjust.

73. Surreal is entitled to damages from AWS for the failure to compensate Surreal for the benefits conferred upon it.

## RELIEF REQUESTED

74. Surreal request the following relief in its favor and against AWS:

75. Judgment against AWS for breach of contract in an amount to be determined at trial;

76. Judgment against AWS for breach of the duty of good faith and fair dealing in an amount to be determined at trial;

77. Judgment against AWS under the theory of quasi-contract, in the amount of the benefit conferred upon AWS by Surreal in an amount to be determined at trial;

78. For interest, both pre and post-judgment, at an interest rate consistent with applicable law; and

79. For any such other and further relief as the Court deems just and equitable.

COMPLAINT - 10
CASE NO. 2:24-cv-1262
#5656700 v3 / 76907-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Dated this 15th day of August, 2024.

          KARR TUTTLE CAMPBELL, P.S.

*/s/ Nathan T. Paine*
Nathan T. Paine, WSBA# 34487
Thomas D. Adams, WSBA #18470
Daniel T. Hagen, WSBA #54015
Joshua R.M. Rosenberg, WSBA #58365
701 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: 206-223-1313
Facsimile: 206-682-7100
Email: npaine@karrtuttle.com
       tadams@karrtuttle.com
       dhagen@karrtuttle.com
       jrosenberg@karrtuttle.com
*Attorneys for Surreal Holdings, LLC*

COMPLAINT - 11
CASE NO. 2:24-cv-1262
#5656700 v3 / 76907-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100